# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIDWAY GAMES INC, *et al.* | ) | Case No. 09-10465 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| THRESHOLD ENTERTAINMENT, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 09-51081 (KG) |
| | ) | |
| MIDWAY GAMES INC., MIDWAY | ) | |
| AMUSEMENT GAMES, LLC, MIDWAY | ) | |
| HOME ENTERTAINMENT INC, SURREAL | ) | |
| SOFTWARE INC., MIDWAY GAMES WEST | ) | |
| INC., MIDWAY STUDIOS-LOS ANGELES | ) | |
| INC., AND MIDWAY STUDIOS-AUSTIN | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | **Re Dkt No. 55** |

## MEMORANDUM OPINION

Threshold Entertainment, Inc. ("Threshold" or "Plaintiff") brought this adversary proceeding (the "Adversary") against the affiliated debtors (the "Debtors" or "Midway") seeking declaratory relief with respect to certain license and intellectual property rights relating to Midway's series of *Mortal Kombat* videogames ("Mortal Kombat"). Threshold has moved[1] to substitute Warner Bros. Entertainment Inc. ("WBEI"), the purchaser of Debtors' assets (the "Sale"), as defendant in the Adversary pursuant to Rule 25 of the Federal

---

[1] Motion of Threshold Entertainment, Inc. for (I) Substitution of Defendant Pursuant to Rule 25 Fed. R. Civ. P., and (II) Transfer of the Proceeding to District Court for the Central District of California (the "Motion") (D.I. 55).

Rules of Civil Procedure (the "Substitution Motion"), which applies to adversary proceedings under Rule 7025 of the Federal Rules of Bankruptcy Procedure. Threshold has also moved to transfer the Adversary (the "Transfer Motion") to the District Court for the Central District of California (the "District Court"). The parties fully briefed the Motion and the matter is ripe for decision.

## I. BACKGROUND

On February 12, 2009 (the "Petition Date"), the Debtors filed for protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subsequently, on May 21, 2009, the Debtors filed a motion to sell substantially all of their assets free and clear of all interests and rights (the "Sale Motion"). In the interim, on June 24, 2009, Threshold simultaneously filed a complaint (the "Complaint") initiating the Adversary and an objection to the Sale Motion (the "Objection"). Threshold asserts four main categories of intellectual property interests that it holds in Mortal Kombat: (1) a perpetual exclusive license to produce derivative works in film and television based on Mortal Kombat, including, but not limited to, the right to produce the next Mortal Kombat film; (2) copyrights in certain of its own derivative works based on Mortal Kombat, including, without limitation, the copyrights to certain characters Threshold claims it created; (3) implied, non-exclusive licenses to use the Debtors' Mortal Kombat- related intellectual property incorporated into derivative works prepared by Threshold; and (4) trademark rights in the word mark MORTAL KOMBAT for use in connection with entertainment services (collectively, the "Intellectual Property Claims").

2

The Objection requested that the buyer take the Debtors' assets subject to the Intellectual Property Claims.  Threshold, the Debtors, WBEI, and the Creditors Committee agreed to resolve the Objection by including the following language in the Order which the Court entered on July 1, 2009, approving the Sale (the "Sale Order") (D.I. 477):

> Notwithstanding anything to the contrary contained in this Order, the transfer of the Purchased Assets authorized hereunder is expressly subject to all of the rights, claims, interests, and licenses, if any of Threshold with respect to the Purchased Assets, as pled in the Adversary Complaint filed by Threshold...(the "Reserved Threshold Rights and Claims").  Neither the entry of this Order, nor the closing and consummation of the transactions authorized hereunder, shall enlarge, reduce, modify, impair or affect in any way the Reserved Threshold Rights and Claims, if any, subject to all available defenses, arguments, and rights, (collectively "Defenses").

Sale Order, ¶ 16.

## II. THE PARTIES' POSITIONS

### A. Plaintiff's Position

Threshold argues that WBEI, as purchaser of substantially all of Debtors' assets, is the only party that may claim rights and interests adverse to those of Threshold and therefore is the appropriate defendant in the Adversary.  Further, Threshold posits that failure to substitute WBEI as defendant will have a preclusive effect on the relief Threshold requests in the Complaint.  However, Threshold next asserts that the very act of substituting WBEI as defendant may deprive the Court of subject matter jurisdiction because after the Sale, neither the Debtors nor their estates had any interest in Mortal Kombat or the Adversary.  Accordingly, the argument continues, because granting the Substitution Motion would be an

act of "jurisdictional significance," transfer of venue to the District Court is appropriate.

**B. WBEI's Position**

WBEI asserts that the Court lacks subject matter jurisdiction over these matters because the Sale relieved the Debtors of any interest in the outcome of the Adversary or in Mortal Kombat. Therefore, it contends, the outcome of the Adversary can have no effect on the Debtors' bankruptcy cases and the Adversary should be dismissed. WBEI further argues that Threshold's delay of approximately 18 months in bringing the Motion exposes WBEI to substantial prejudice in mounting its defenses.

## III. DISCUSSION

**A. Subject Matter Jurisdiction**

28 U.S.C. § 1334 demarcates the parameters of federal bankruptcy jurisdiction. Section 1334(b) confers upon the District Courts "original but not exclusive jurisdiction of all cases arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 157(a) of the Bankruptcy Code, in turn, grants authority to the District Courts to refer most matters to a bankruptcy court. *See* 28 U.S.C. §§ 157(a), 151. "Bankruptcy court jurisdiction potentially extends to four types of title 11 matters: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 162 (3d Cir. 2004) (citations omitted). While many orders contain jurisdiction retention provisions, "[w]here a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has

jurisdiction in a confirmation or other order." *Resorts Int'l, Inc.,* 372 F.3d at 161.

Section 157 bifurcates the bankruptcy courts' power, distinguishing between "core" and "non-core" matters. *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266 (3d Cir. 1991). "A proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Id.* at 267. For example, a proceeding that requires a bankruptcy court to interpret and give effect to its previous sale order is core. *In re Allegheny Health Educ. and Research Foundation,* 383 F.3d 169 (3d Cir. 2004) (because adversary proceeding required bankruptcy court to interpret and give effect to its previous sale order, it had jurisdiction over adversary proceeding where buyer in asset sale sought vacatur of arbitration award entered in favor of labor union on issue of buyer's obligations to pay sick leave benefits under collective bargaining agreements assigned to buyer in connection with asset sale).

With respect to non-core proceedings, the bankruptcy court will have jurisdiction over such matters only if they are sufficiently "related to" the bankruptcy case. The test for related to jurisdiction is "whether *the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy*."[2] *Pacor Inc. v. Higgins, (In re Pacor),* 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original), overruled on other grounds, *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). For

---

[2] The Third Circuit in *Pacor* described the test as "conceivably" having "any effect," a low threshold, indeed. Later, however, the Third Circuit in *In re Bobroff,* 766 F.2d 797, 802-03 (3d Cir. 1985), stated that in *Pacor* it had adopted the "usual" formulation which requires more than a mere "conceivable" effect. Nearly anything is "conceivable" and thus courts must reject tenuous connections. *See, e.g.*, *Sanders Confectionary Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 482 (6th Cir. 1992).

example, the court declined to exercise related to jurisdiction over an adversary proceeding regarding assets sold to a third party, holding it to be non-core where the outcome of such proceeding could have no effect on the outcome or administration of the bankruptcy estate. *Central Transport, Inc. v. The Village of Hodgkins (In re Hall's Motor Transit Co.)*, 889 F.2d 520, 522 (3d Cir. 1989) (adversary proceeding was non-core where buyer of property sought to enjoin ticketing of its freight drivers under zoning law upgrading the property from motor freight terminal to commercial during the pendency of the contract for sale because any declaratory or injunctive relief obtained could have no conceivable effect on the estate).

Often, analysis of related to jurisdiction arises in the context of post-confirmation jurisdiction. For example, in *Resorts Int'l, Inc.,* the Third Circuit analyzed post-confirmation jurisdiction in the context of claims for accounting malpractice by the litigation trust formed under the chapter 11 plan. The Third Circuit observed:

> After confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic. This is so because, under traditional *Pacor* analysis, **bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates "the logical possibility that the estate will be affected."** At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred. Unless otherwise provided by the plan or order confirming the plan, "the confirmation of a plan vests all of the property of the estate" in the reorganized debtor.

*Resorts Int'l, Inc.,* 372 F.3d at 165 (citations omitted) (emphasis added). Further, the Third Circuit noted that the "essential inquiry" in any post-confirmation jurisdictional analysis is

whether there is a sufficiently "close nexus" between the bankruptcy proceeding and the post-confirmation matter. *Id.* at 166. Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan typically will have a sufficient nexus to warrant "related to" jurisdiction following plan confirmation. *Id.* at 168-169; see also *In re Shenango Group Inc.*, 501 F.3d 338, 343 (3d Cir. 2007).

As an initial matter, notwithstanding the jurisdiction retention provision in the Sale Order, the nature of this dispute brings the Court's jurisdiction over the Mortal Kombat litigation into question. The dispute is between two unrelated third parties, Threshold and WBEI, and the property at issue, Mortal Kombat, no longer comprises part of the bankruptcy estate. These factors, taken together, critically undermine the notion that this Court has jurisdiction to decide either the Substitution Motion or the Transfer Motion. The controversy at issue does not involve an attempt by Threshold to readjust the terms of the Sale or anything which might even remotely place the Debtors' estate at risk. Any possible "related to" jurisdiction would be attenuated at best. Moreover, the very fact that Threshold has asked the Court to transfer the case to the District Court shows that even Threshold does not believe this matter belongs before the Court.

An exercise of jurisdiction over matters connected to a sale under section 363 of the Bankruptcy Code is proper if the case turns on interpretation of the sale order. Such cases are similar to cases dealing with post-confirmation jurisdictional analyses, where the facts require a court to assume jurisdiction because there is a "close nexus" to the bankruptcy plan or proceeding. In *Allegheny*, the key fact on appeal to the Third Circuit was that the

bankruptcy court's finding that the suit to vacate the arbitration award and the corresponding counterclaim to enforce it required the bankruptcy court to interpret and enforce the terms of its sale order. *Allegheny*, 383 F.3d 169 (3d Cir. 2004). The Third Circuit held that once the bankruptcy court made that finding, it had jurisdiction over the entire suit and counterclaim. *Id.*

Unlike *Alleghany*, nothing in the Adversary requires the Court to interpret or enforce the terms of the Sale Order. Rather, as in *Hall's Motor Transit Co.*, the Court is certain that the relief Threshold seeks with respect to the Intellectual Property Claims could have no conceivable effect on the bankruptcy estate.

### B. Dismissal Under Rule 12(h)(3)

Federal Rule of Civil Procedure 12 (h)(3), made applicable here by Bankruptcy Rule 7012(b), provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3); see also *In re Eltech, Inc.*, 313 B.R. 659 (W.D. Pa. 2004) (court dismissed balance of adversary proceeding *sua sponte* for lack of subject matter jurisdiction). The Court's finding that it has no jurisdiction over the Adversary mandates dismissal.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will dismiss the Adversary by separate Order, and thereby deny the Motion.

Dated: March 29, 2011

KEVIN GROSS, U.S.B.J.

8